The document below is hereby signed.

Signed: April 13, 2009.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MICHAEL JOSEPH SINDRAM, | ) | Case No. 08-00559 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | Not for Publication in |
| | ) | West's Bankruptcy Reporter |

MEMORANDUM DECISION RE MOTION FOR CLARIFICATION AND MODIFICATION
OF ORDER AND FOR RELATED RELIEF AS TO SANCTIONS AGAINST PEPCO

This case commenced on August 19, 2008, as a chapter 13 case and was converted to chapter 7 on September 22, 2008. This addresses the debtor Sindram's Motion for Clarification and Modification of Order and for Related Relief as to Sanctions Against PEPCO (Docket Entry ("DE") No. 112). The motion relates to the court's order denying an earlier motion in which Sindram sought damages against the Potomac Electric Power Company ("PEPCO") for allegedly violating the automatic stay by seeking payment for electric service.

I

Sindram correctly observes that my decision addressing that earlier motion failed to notice that the bills, albeit monthly

bills issued postconversion,[1] included a carryover balance from prior periods preceding September 22, 2008, the date of conversion of the case to chapter 7.[2]

A.

Charges for Postconversion Service

As I observed in the prior decision, collection of a claim for service on or after September 22, 2008, is unaffected by the automatic stay as such a claim is not treated as arising prior to the commencement of the case.

B.

Charges for Postpetition-Preconversion Service

Claims incurred postpetition and preconversion are treated as though they are prepetition claims to the extent that they are not administrative claims under 11 U.S.C. § 503(b).  11 U.S.C. § 348(d).  If PEPCO's claim incurred postpetition and preconversion is not treated as an administrative claim, it will be treated as a prepetition claim.  Sindram was not engaged in a

---

[1] PEPCO issued monthly bills on the respective dates of October 31, 2008 (relating to the service period of September 29, 2008, to October 28, 2008); December 4, 2008 (relating to the service period of October 28, 2008, to December 2, 2008); and January 6, 2009 (relating to the service period of December 2, 2008, to January 3, 2009).

[2] The electric usage histories reflected in the bills makes evident that PEPCO must have been including in its bills amounts owed not only for the period of September 22, 2008, to September 29, 2008, but also amounts for service preceding the September 22, 2008, date of conversion of the case.

business, with the electric service thereby an incident of preserving the estate, and I will assume (without precluding PEPCO from showing otherwise) that the claim for electric service in the chapter 13 case was not an administrative claim. Upon conversion, the claim, if non-administrative and hence a deemed-prepetition claim, became subject to the provisions of the automatic stay of § 362(a).

Under 11 U.S.C. § 366(b), the debtor was required to provide adequate assurance of payment of his utility bills, and "§ 366(b) has been read as an exception to the automatic stay, allowing a utility to alter, refuse or discontinue service for failure to provide adequate assurance of payment without recourse to the bankruptcy court." In re Jones  369 B.R. 745, 748 (B.A.P. 1st Cir. 2007). A utility can additionally terminate service for failure to make postpetition payments for which adequate assurance of performance could be demanded by the utility.

But once the case was converted to chapter 7, the deemed-prepetition character of PEPCO's postpetition-preconversion claim (unless it was an administrative claim) removed those claims from the category of postpetition claims that can serve as a basis to terminate service and that can be billed without violating the automatic stay. In re Jones, 369 B.R. at 751; In re Davis, 311 B.R. 922 (Bankr. M.D. Ga. 2004).

C.

Charges for Prepetition Service

Moreover, it appears that the bills also included a carryover charge for periods preceding the commencement of the case on August 19, 2008. As observed in In re Kiriluk, 76 B.R. 979, 982 (Bankr. E.D. Pa. 1987):

> While a cure or assurance of a prompt cure of a prepetition default is required in order for a debtor to assume an executory contract, see 11 U.S.C. § 365(b)(1), a debtor need not cure a prepetition default to a utility company in order to maintain utility services. See In re Gehrke, 57 B.R. 97 (Bankr. D. Or. 1985). Thus, by virtue of § 362(a)(6), a utility cannot attempt to collect upon its prepetition debt, yet it must continue to provide service to the debtor, subject only to § 366(b).

Under 11 U.S.C. § 366(b), PEPCO was entitled to demand a deposit as security, and such a demand would not have violated the automatic stay. In re Santa Clara Circuits West, Inc., 27 B.R. 680, 683 (Bankr. D. Utah 1982). If the bills were treated as demanding the amount of the prepetition claim as a deposit to assure postpetition performance, no stay violation would have arisen, and Sindram's recourse would have been to challenge the reasonableness of the deposit demand. Id. But the bills do not purport to demand payment of the prepetition claim as a deposit (to be held as a deposit for future services), and instead appear to demand payment to be applied to the prepetition claim.

II

Sindram's Motion for Clarification and Modification of Order and for Related Relief as to Sanctions Against PEPCO includes as an exhibit a Notice of Intent to Disconnect Electric Services dated January 21, 2009, which states that Sindram must pay $291.10 to prevent discontinuation of his electric service. The automatic stay was still in effect because Sindram was not issued a discharge until January 23, 2009. PEPCO was not barred from demanding payment for electric service provided after the date of conversion, and if Sindram did not tender the amount owed for such postconversion service, PEPCO was within its rights to terminate service. Nevertheless, the $291.10 demanded appears to have included amounts owed for services rendered pre-conversion that PEPCO was stayed from collecting. The court will treat the debtor's motion for sanctions as including this additional alleged violation of the automatic stay.

III

PEPCO's opposition to Sindram's motion for sanctions raised defenses to the recovery of sanctions not addressed by the prior decision. First, PEPCO contended that it was not given notice of the case, but it is not clear that this applies to all of the bills it issued.

Second, PEPCO contends that Sindram has not pled how he has been damaged. Nor has Sindram pled facts showing that he

attempted to mitigate any damages by contacting PEPCO to point out its violation of the automatic stay.  But Sindram alleges that PEPCO willfully violated the automatic stay, and he is entitled at a hearing to show his actual damages and to attempt at a hearing to demonstrate that the circumstances are appropriate for the imposition of punitive damages.  11 U.S.C. § 362(k)(1).

IV

An order follows that vacates the prior order to the extent that it denied Sindram's motion with respect to the alleged violation of the automatic stay with respect to demands for payment of prepetition claims, but keeping in place the dismissal of the balance of Sindram's motion that sought relief not within the subject matter jurisdiction of this court.

[Signed and dated above.]

Copies to:  Office of U.S. Trustee; Debtor; Chapter 7 Trustee;

Jack E. Strausman, Esq.
Pepco Holdings, Inc.
701 Ninth Street, NW
Washington, D.C. 20068